UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

Case No. 1:08-cr-126

v.

HON. JANET T. NEFF

DOUGLAS FRECHETTE,

Defendant.
______________________________________/

**OPINION**

Pending before the Court is Defendant's Motion to Suppress Search Warrant and Statements of Defendant (Dkt 16). On September 12, 2008, the Court held an evidentiary hearing in which the government presented the testimony of Immigration and Customs Enforcement (ICE) Senior Special Agent Craig Smith, the affiant of the search warrant affidavit. The Court also heard testimony from defendant. Following the hearing, the Court rendered an oral decision on the motion in a Bench Opinion. The Court now enters this written opinion fully setting forth the basis of its decision.

I. Preface

Defendant Douglas Frechette is charged with receipt of child pornography and possession of images of a minor engaging in sexually explicit conduct. In his Motion to Suppress, defendant moves to quash the search warrant on the grounds that the warrant and affidavit lack adequate probable cause and the information is stale. He also moves to suppress an incriminating statement

he gave at the time of the search, on the grounds that it was taken in violation of *Miranda*[1] and is "fruit of the poisonous tree" under *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). The government has filed a Response to the motion (Dkt 18).

At the outset, the Court observes that this case, as any case of a morally objectionable nature involving procedural or technical challenges, requires consideration of Fourth Amendment principles untainted by the offensive nature of the crimes charged. The Fourth Amendment warrant requirements are not, and should not be, insurmountable hurdles to the legitimate enforcement of the law. But neither can they be illusory.

This case is no doubt appalling to the moral sensibility of most of us. But it must not deny the protections of the Constitution to the least of us. There is no such thing as a fairweather Constitution—one which offers the harbor of its protections against unreasonable search and seizure only in palatable contexts and only to worthy defendants. Thus, while the Court recognizes that a magistrate judge's decision regarding probable cause is entitled to great deference,[2] that deference cannot be transformed into a mere rubber stamp by the district court. It is worthy of note that a magistrate judge has only the perspective of the government agent requesting issuance of a warrant, while the district judge has the benefit of briefing, testimony, and argument that present both sides of the issue.

The Court has carefully considered the parties' briefs, the testimony presented, and oral argument. The Court has also endeavored to apply the principles underlying the requirements for

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] *United States v. Calloway*, 116 F.3d 1129, 1132 (6th Cir. 1997).

a search warrant independently of the particular context of this case. For the reasons that follow, the Court grants defendant's motion.

II. Facts

The underlying facts are undisputed. On April 3, 2008, a search warrant was signed by the magistrate judge pertaining to a search of defendant's residence at 873 Van Eyck Street in Muskegon, where defendant lived with his mother, Darlene Carey. The warrant authorized agents to search any computers and/or digital storage media that might contain evidence of child pornography.

A six-page affidavit by Immigration and Customs Enforcement (ICE) Senior Special Agent Craig Smith was filed in support of the warrant. According to the affidavit, on November 26, 2007, Smith received information from the ICE Cyber Crimes Center, Child Exploitation Section (ICE/C3/CES), that defendant had subscribed to a child pornography member-restricted website on January 13, 2007 for a fee of $79.95 a month. The member-restricted website was called "HTTP:\\slut-lolita.com." The $79.95 access fee was paid using a PayPal account. PayPal records indicated that defendant opened the PayPal account on January 13, 2007, listing a home address of 873 Van Eyck Street in Muskegon and that he last accessed his account using an IP address of 24.11.4.32. [Smith Aff. ¶¶ 4-6.]

PayPal transactional records indicated that defendant purchased a membership to the "slut-lolita" room on January 13, 2007 at 9:06:29 (EST). The transaction came from an IP address of 24.11.4.32, the email address provided was shadowrider43@comcast.net, and the phone number provided by the purchaser was 231-788-2424. The debit card associated with the PayPal account allowed defendant to access his Huntington Bank account. The debit card was frequently used by

defendant for purchases in the Muskegon area, and defendant did not protest the $79.95 transaction with PayPal, indicating that the charge was made knowingly and with his consent. [Smith Aff. ¶¶ 7-8.]

Further, the IP address was owned by Comcast. In response to a subpoena, Comcast indicated that the account associated with "shadowrider43" was subscribed to by Darlene Carey, 873 Van Eyck Street in Muskegon. However, Comcast was unable to provide transaction information for the IP address from January 13, 2007 because Comcast retains those records for only 180 days. [Smith Aff. ¶ 9.]

The affidavit also included specific information about the child pornography nature of the slut-lolita website, indicating that undercover agents had accessed the web pages on December 27, 2006 and viewed and copied some of the pages. [Smith Aff. ¶ 11.] The affidavit also stated that defendant had a prior 2nd-degree criminal sexual conduct conviction on November 11, 2005, involving the sexual assault of a 20-year old female, and that defendant was listed on the Michigan sex offender registry. [Smith Aff. ¶ 12.] In addition to the specific averments pertaining to this case, the affidavit also contained a lengthy section on "Background on Computers and Child Pornography," and a lengthy section on "Background in Searching and Seizing Computers," none of which related to defendant specifically or individually.

On April 8, 2008, ICE agents and Michigan State Police executed the search warrant at defendant's residence. During the search, Special Agents Smith and Michael George conducted an interview of defendant. Defendant gave an incriminating statement at the time of the search and again later after his arrest about a month after the search. [Def. Resp. 4-5.]

III. Search Warrant

Defendant argues that the affidavit for the search warrant lacked the necessary probable cause and that the information listed in the affidavit was too stale and remote to serve as the basis for the warrant. The Supreme Court has defined probable cause to search as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Padro*, 52 F.3d 120, 123 (6th Cir. 1995). Probable cause "is satisfied if the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched." *United States v. Besase*, 521 F.2d 1306, 1307 (6th Cir. 1975). A determination of probable cause by the issuing magistrate judge will be upheld "so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing . . . ." *Illinois*, 462 U.S. at 236 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).

"The probable cause inquiry gauges the likelihood that evidence of a crime may presently be found at a certain location." *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006). "A warrant must be supported by 'facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause *at that time*.'" *Id.* (quoting *Sgro v. United States*, 187 U.S. 206, 210 (1932) (emphasis added)).

With regard to probable cause, defendant asserts that ICE/C3/CES had only limited information regarding defendant, which, when isolated from the boilerplate, did not establish probable cause to search defendant's residence. The Court agrees.

The affidavit in this case establishes two aspects of underlying fact. First, the affidavit establishes some generic facts, including defendant's address, email, and PayPal account, and second, it establishes that on January 13, 2007, defendant purchased a membership to access the "slut-lolita" website with a $79.95 PayPal payment. Fatally missing from the affidavit is any link between this factual basis and the conclusion that there was a fair probability that evidence of a crime would be found at defendant's home or on the computer within that home in April of 2008, approximately sixteen months later when the warrant was executed. *See Illinois,* 462 U.S. at 238.

The essential core of the affidavit consists of boilerplate recitations of background on computers and child pornography, and background in searching and seizing computers. Indeed, of the 31 paragraphs in the affidavit, paragraphs 13-31 are comprised of the boilerplate recitation. This boilerplate fully explains the evidentiary contours of child pornography found on computers, but it is devoid of any connection to defendant. There is no factual link and there is no expert opinion link. That is, the boilerplate recitations pertaining to child pornography are not particularized to the facts of the case. And given the very limited factual premise for the alleged criminal activity, that is, a one-time PayPal payment for a one-month membership to the website—there is not enough for an inferential connection. Without some link between defendant and evidence of child pornography, probable cause is not established. Mere boilerplate recitations concerning child molesters, pedophiles, and child pornography collectors, do not establish probable cause where there is no evidence in the affidavit linking the defendant to those classifications. "[I]f the government presents expert opinion about the behavior of a particular class of persons, for the opinion to have any relevance, the affidavit must lay a foundation which shows that the person subject to the search is a member of the class." *United States v. Weber,* 923 F.2d 1338, 1345 (9th Cir. 1990).

Defendant also challenges the search warrant in this case on the grounds of staleness. In this regard, defendant points out that at the time the warrant was executed, on April 8, 2008, approximately sixteen months had passed since the alleged unlawful conduct had occurred. "The expiration of probable cause is determined by the circumstances of each case, and depends on the inherent nature of the crime." *Hython*, 443 F.3d at 485 (citations omitted). Even assuming a connection could be established by labeling defendant as a "consumer" of child pornography, (a term referenced in the affidavit's expert opinion section), on the basis of defendant's single PayPal transaction in January 2007, any probable cause had grown stale by the time the search warrant was obtained and executed in April 2008, some sixteen months later.

The question of staleness with regard to the information supporting probable cause depends not on arbitrary time limitations, but rather, as pointed out by the Assistant United States Attorney in his very able argument, on the nature of the crime, the criminal, the thing to be seized, and the place to be searched. *United States v. Spikes*, 158 F.3d 913, 923-24 (6th Cir. 1998). Stated somewhat differently, the court should consider the defendant's course of conduct, the nature and duration of the offense, the nature of the relevant evidence, and any corroboration of the information. *United States v. Gardiner*, 463 F.3d 445, 471 (6th Cir. 2006). "[E]ven if a significant period has elapsed since a defendant's last reported criminal activity, it is still possible that, depending upon the nature of the crime, a magistrate may properly infer that evidence of wrongdoing is still to be found on the premises." *Spikes*, 158 F.3d at 923. Where information in an affidavit is stale, probable cause may still be supported if it relates to protracted or continuous conduct. *United States v. Henson*, 848 F.2d 1374, 1381-82 (6th Cir. 1988).

Defendant contends that the only way for the government to argue in this case that the activity should be found to be ongoing and continuous is to argue that pornography automatically falls into this category—and to make the leap that defendant is first a pedophile, and second, that this was ongoing activity, which seems to be one of the thrusts of the testimony of Special Agent Smith. Defendant asserts that nothing in the affidavit supports this reasoning. The Court agrees that there is no evidence of repeated or ongoing activity by defendant. Also particularly noteworthy, is that there was no corroborating evidence of the alleged criminal activity.

The affidavit shows only that defendant opened a one-month membership account for $79.95 through PayPal to the "slut-lolita" website. This single instance of joining the website is unsupported by any further police investigation. Special Agent Smith's testimony in the evidentiary hearing established that no attempt was made to investigate whether defendant was involved in any other similar or more recent incidents of activity. There was no evidence that defendant subscribed more than one month or even accessed the site after he subscribed in January 2007. There was no indication in the affidavit that based on Special Agent Smith's expert opinion, defendant was identified as a member of a particular class that is engaged in ongoing activity involving child pornography. Thus, in the Court's view, nothing in the affidavit indicates that defendant's alleged misconduct was protracted or continuous to thereby overcome any staleness of the affidavit.

IV. Good Faith Exception

Evidence seized pursuant to an invalid search warrant may nonetheless be admissible if the searching officers relied on the magistrate's issuance of a warrant for the search in good faith. *United States v. Leon*, 468 U.S. 897, 922-24 (1984). The inquiry is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."

*Id.* at 923, n.23. Objective good faith is not manifested if an affidavit is "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Leon*, 468 U.S. at 923 (citation omitted).

Defendant contends that the good faith exception should not apply because the affidavit was devoid of information that supports probable cause and/or the warrant is facially deficient. *Id.*; *United States v. Czvpryski*, 46 F.3d 560, 563-64 (6th Cir. 1995). The Court agrees.

The agents' reliance on the search warrant was not objectively reasonable in light of: (1) the very limited factual basis for the alleged criminal activity that was set forth in the affidavit, (2) the absence of any connection between defendant and evidence of child pornography, and (3) the readily apparent staleness. The Court therefore concludes that the good faith exception to the exclusionary rule is inapplicable under these circumstances. Accordingly, defendant's statements must be suppressed under the "fruit of the poisonous tree doctrine." *United States v. Parker*, 214 F. Supp. 2d 770, 779-80 (E.D. Mich. 2002), citing *Wong Sun*, 371 U.S. 471. Defendant's Motion to Suppress is granted.

DATED: September 17, 2008

/s/ Janet T. Neff
JANET T. NEFF
United States District Judge